IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA



JIHUI ZHANG )
 )
                    PLAINTIFF, )
 )
v. )
 )    Civil Action No. 1:11-CV-129
FEDERATION OF STATE MEDICAL )
BOARDS, NATIONAL BOARD OF )
MEDICAL EXAMINERS, AND )
PROMETRIC, )
 )
                    DEFENDANTS. )

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT

## PROMETRIC INC.'S MOTION TO DISMISS

JIHUI ZHANG, *pro se* Plaintiff
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com

Plaintiff Jihui Zhang, pro se, has filed a complaint with this Court seeking a declaratory relief, injunctive relief, and general damages that the Defendants Federation of State Medical Boards (FSMB), National Board of Medical Examiners (NBME), and Prometric Inc. ("Prometric") have breached their internal policies and denied the Plaintiff's civil rights secured by 42 U.S.C. § 20002-2(a). In response, only Prometric has moved to dismiss the Plaintiff's Complaint on multiple grounds citing Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Plaintiff, pursuant to Local Rules 7.1 and 7.3, submits the following Brief in support of his opposition to Prometric's motion to Dismiss.

## STATEMENT OF THE CASE

The case before the Court is simple and straightforward. Parts of the case relevant to Prometric concern the scheduling and the actual delivery of Plaintiff's United States Medical Licensure Examination (USMLE) Step 3. Parts of the case on Plaintiff's Step 3 test score recheck are only relevant to Defendants FSMB and NBME, and hence they will not be addressed in this Brief.

In November of 2007, Plaintiff quit his full-time faculty job at the University of North Carolina at Chapel Hill to pursue a career in clinical medicine. To do so, Plaintiff had to pass USMLE, which is comprised of Step 1, Step 2, and Step 3, prior to obtaining a medical license and starting residency training. In less than eight months, Plaintiff successfully passed both Step 1 and 2 on first attempt and with good scores (mid 80s). With an aim of getting a higher score (in the 90s) on Step 3 and after more than one year

of preparation, Plaintiff scheduled his Step 3 test dates through Prometric's online scheduling system on December 7, 2009. Prometric assigned the Plaintiff to two non-consecutive days (January 25 and 28, 2010), which were the earliest dates available for choosing at the time of scheduling at the Prometric Test Center in Greensboro, NC. Plaintiff took his Step 3 on the dates as assigned at Prometric's Greensboro Test Center.

Please note that the Plaintiff first tried to schedule his Step 3 at Prometric's Raleigh, NC test center, where he took his Step 1 and 2. However, the earliest dates available at the Raleigh test center did not meet the Plaintiff's needs. During the months of December 2009 and January 2010, the Plaintiff was interviewed for residency training by several programs, and Plaintiff informed those programs that he would take Step 3 test and provide them his score when it became available. The plan was to take Step 3 before the end of January 2010 and to have the score ready before the deadline for residency programs to rank their candidates, which was February 24, 2010. As a foreign medical graduate, the Plaintiff understood at the time that passing Step 3 has paramount importance for securing a position in residency training, even though it is not an official requirement by any residency program. On the other hand, failure to pass Step 3 has a significant detrimental effect. Understanding the consequences, the Plaintiff was fully prepared for the test with confidence to score high.

The Plaintiff received his Step 3 score report from FSMB on February 17, 2010 with a failing score of 68, while a passing score was set at 75. In shocking disbelief, Plaintiff made a prompt request on the same day for a score recheck to FSMB by

following USMLE policy. When Plaintiff contacted FSMB on February 22, 2010, a staff member by first name "Lisa" at FSMB's Office of Examination Services recognized immediately it was out of norm to assign an examinee's Step 3 test on a Monday and a Thursday, and she was apparently surprised that the test was actually taken on the two days assigned. That was the time when Plaintiff first came to know that his non-consecutive-day Step 3 test was not quite right. Since then, the Plaintiff had numerous contacts with FSMB, NBME, and Prometric. While a Prometric representative acknowledged that the scheduling was indeed a violation of USMLE policy, both FSMB and NBME denied it with reasons that contradict their own USMLE policy. FSMB and NBME also insisted that Plaintiff's Step 3 test on two non-consecutive days does not affect in any way the scoring of the test. Compl. Exs. C, D, G, H.

## QUESTIONS PRESENTED

Has Prometric violated USMLE policy in scheduling and delivering Plaintiff's Step 3 test? Can such a violation affect the accuracy of Plaintiff's Step 3 test score?

## ARGUMENT

### A. The Standard Applicable to Defendant's Motion to Dismiss

Under Federal Rule 12(b)(6), the Defendant must demonstrate "beyond doubt that the [Plaintiff] can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir.1997). The Court, in making its determination, must "accept the factual allegations in the [Plaintiff's] complaint and must construe those facts in the light most favorable to the [Plaintiff]." *Id.*

Clearly, the Defendants' motion cannot survive the application of these standards, as demonstrated below.

### B. Taking Step 3 Test on Two Non-Consecutive Days Without a Justifiable Cause Is a Violation of USMLE Policy.

Prometric, as test service provider of the USMLE Step 3 and through its online scheduling system, assigned Plaintiff on December 7, 2009 to two non-consecutive days (Monday, 01/25/2010 and Thursday, 01/28/2010) for his Step 3 test. However, USMLE 2010 Bulletin of Information explicitly states, without ambiguity, the policy on scheduling Step 3 test. Compl. Ex. A.

> Some, but not all, Prometric Test Centers are open on weekend days. When [examinees] schedule [their] Step 3 test dates, the two days on which [examinees] take the test must be consecutive, unless the center is closed on the day that follows [examinees'] first day of testing. In that event, Prometric will assign [examinees] to the next day the center is open for [examinees'] second day of testing. <u>In all other cases, [examinees] must take Step 3 on two consecutive days at the same test center.</u>

Whereas it is true that an examinee may take his or her Step 3 test on days of his or her choosing within his or her eligibility period, the policy is clear that the two days must be consecutive, unless the test center is closed on the day that follows the first day of testing. To make the matter worse, the Prometric Test Center, where Plaintiff took his Step 3, failed to abide by this policy and negligently permitted Plaintiff's Step 3 test on two non-consecutive days.

Plaintiff contacted Defendant's office in Baltimore, MD on April 12, 2010. A Prometric representative by first name "Gwen" stated unequivocally that the scheduling

- 5 -
Case 1:11-CV-129 Plaintiff's Brief in Opposition to Defendant Prometric Inc.'s Motion to Dismiss

Case 1:11-cv-00129-CCE-PTS   Document 27   Filed 05/10/11   Page 5 of 10

of Plaintiff's Step 3 test on two non-consecutive days was indeed a violation of USMLE policy. Ironically, both FSMB and NBME (co-sponsor of USMLE) have repeatedly denied without a justifiable cause that Plaintiff's two non-consecutive-day Step 3 test was in violation of their policy. Blaming the Plaintiff for selecting the two earliest but non-consecutive days (Compl. Ex. C) does not relieve Prometric's responsibility for complying with and FSMB/NBME's responsibility to enforce the USMLE policy. The fact is that Prometric's online system granted the irregular scheduling that should have not been allowed, and the Plaintiff at that time was not aware of the scheduling was irregular. FSMB and NBME further stated, "[T]he center at which [Plaintiff] tested is often closed on Tuesdays and Wednesdays." Compl. Exs. D, G. But both FSMB and NBME refused to confirm that in fact the test center was closed on Tuesday and Wednesday, January 26 and 27, 2010.

It is clear that the scheduling and further permitting a Step 3 test on Monday of January 25, 2010 and Thursday of January 28, 210 by Prometric has violated USMLE policy on Step 3 test.

### C. Taking Step 3 Test on Two Non-Consecutive Days Without a Justifiable Cause Can Result in Scoring Errors by NBME.

Per conversations with Defendants FSMB and NBME, the Plaintiff was assured that the computer-based Step 3 test is 100% automated and fail-safe. Prometric test centers do not handle examinees' test data since they are recorded and transferred simultaneously to NBME for scoring. Compl. ¶7. However, such statements are simply

not true. Prometric test centers do electronically bundle Step 3 examinees' test data from two test days for scoring. In *Grant v. National Board of Medical Examiners, et al.* 2009 WL 1457698 (N.D.N.Y.), it states,

> The Step 3 examination is delivered in two parts: a multiple choice portion and a computer-based case simulation ("CCS"). Dillion Aff. at p. 3. In the computer-based simulation, a "computer presents a simulated patient to the examinee, who decides which diagnostic information to obtain and how to treat and monitor patient progress in computer-simulated time." *Id.* Together, an examinee's response to both portions of the Step 3 exam combine to create his "Response Record." <u>After a Step 3 exam ends, the test delivery vendor, Prometric, "electronically bundles the examinee's Response Record and other Response Records from that testing center, encrypts the data and transmits it over secure lines to Prometric's data center."</u> The Response Records are stored at Prometic's data center until the NBME decrypts and scores the records using a computerized scoring program. *Id* at p. 5. The computerized scoring program is completely automated and computers perform "all the substantive tasks necessary to produce a final score." *Id* at p. 6. For each Response Record, the computerized scoring program produces a multiple choice raw score and a CCS raw score. The multiple choice raw score reflects the number of items answered correctly and the CCS raw score reflects the number of points obtained in managing the simulated patient. An examinee's final score is derived from these two scores.

Obviously, Prometric has established standard protocols for bundling data from Step 3 tests taken on two consecutive days and on two non-consecutive days with justifiable causes (split by a holiday or weekend days when the test center is not open). The Plaintiff has reasonable belief that Prometric's protocol for test data bundling may not be capable of properly combining Plaintiff's Step 3 test data. Negligence by Prometric and/or technical glitches can conceivably arise owing to Plaintiff's out of norm Step 3 test on two non-permissible and non-consecutive days. This also explains why

- 7 -
Case 1:11-CV-129 Plaintiff's Brief in Opposition to Defendant Prometric Inc.'s Motion to Dismiss

Case 1:11-cv-00129-CCE-PTS Document 27 Filed 05/10/11 Page 7 of 10

USMLE policy on Step 3 test strictly requires two consecutive days. Plaintiff believes strongly that improperly bundling of his test data by Prometric led to errors in scoring his Step 3 test by NBME. Specifically, Plaintiff believes that his Step 3 score was solely based on the second part of the test taken on day 2, whereas the first part of the test taken on day 1 was saved electronically by Prometric but not properly bundled with the day 2 data, and hence not scored by NBME. Such a conclusion is reasonably drawn from Plaintiff's Step 3 performance profile shown on his score report from USMLE, as stated in Compl. Ex. F. Reasons for Plaintiff's extremely low Step 3 score can only be attributed to Prometric's actions but not the Plaintiff's. Thus, Plaintiff respectfully requests that this Court find whether Plaintiff's Step 3 test data were in fact properly bundled by Prometric.

### D.  Plaintiff's Civil Rights Were either Denied or Interfered with by Defendants FSMB, NBME, and Prometric

Under 42 U.S.C. § 2000a(e) and 42 U.S.C. § 2000a(b)4(B), although being establishments not open to the public, Defendants as either USMLE Step 3 test administrators or test service provider must be considered a public accommodation to Plaintiff and other examinees who have fully paid for taking the test. Therefore, Plaintiff is fully and equally protected by 42 U.S.C. § 2000a-2 from "deprivation of, interference with, and punishment for exercising rights and privileges" secured under 42 U.S.C. § 2000a, which also entitles Plaintiff equal access to services provided by Defendants. Defendants, especially FSMB and NBME, cannot deny Plaintiff's request for further

investigating his Step 3 score solely based on he is not an American but a foreign medical graduate. Compl. ¶4.

Furthermore, as a *pro se* litigant, the Plaintiff should be held to less stringent standards than those who are counseled by attorneys. Cf. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (holding pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). This Court is "to go to particular pains to protect *pro se* litigants against consequences of technical errors if injustice would otherwise result." U.S. v. Sanchez, 88 F.3d 1243 (D.C. Cir. 1996).

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny, in its entirety, the Defendant's Motion to Dismiss the complaint.

Respectfully submitted this 10th day of May, 2011.

*[signature]*

JIHUI ZHANG, *pro se* Plaintiff
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Plaintiff's Brief in Opposition to Defendant Prometric Inc.'s Motion to Dismiss was served upon Defendant's counsel on May 10th, 2011 by Certified Mail, Return Receipt Requested, postage prepaid, and addressed to the following:

> Reid L. Phillips
> Benjamin R. Norman
> Brooks, Pierce, McLendon, Humphery & Leonard, LLP
> 2000 Renaissance Plaza
> 230 North Elm Street
> Greensboro, NC 27401

The original Certified Mail receipt is attached. The return receipt, however, has not yet been returned from the recipient, and can be provided if required and when available.

This the 10th day of May, 2011.

*[signature]*

JIHUI ZHANG, *pro se* Plaintiff
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com