IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JIHUI ZHANG ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:11-CV-129 |
| FEDERATION OF STATE MEDICAL ) | |
| BOARDS, NATIONAL BOARD OF ) | |
| MEDICAL EXAMINERS, AND ) | |
| PROMETRIC, ) | |
| ) | |
| DEFENDANTS. ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT FEDERATION OF STATE MEDICAL BOARDS' AND NATIONAL BOARD OF MEDICAL EXAMINERS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

JIHUI ZHANG, *pro se* Plaintiff
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com

Plaintiff Jihui Zhang, pro se, has filed a complaint with this Court seeking a declaratory relief, injunctive relief, and general damages that the Defendants Federation of State Medical Boards (FSMB), National Board of Medical Examiners (NBME), and Prometric Inc. ("Prometric") have breached their internal policies and denied the Plaintiff's due legal rights secured by 42 U.S.C. § 20002-2(a). In response, Defendants FSMB and NBME have moved to dismiss Plaintiff's Complaint on multiple grounds citing Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Please note: As a pro se litigant and a non CM/ECF participant, the Plaintiff never received a copy of Defendants' Motion and Brief from them. Such a copy was provided by the Office of the Clerk at the request of the Plaintiff when he found out that the Defendants had already filed a motion to dismiss three weeks ago while he was filing his opposition to Dependant Promertic Inc.'s motion to dismiss at the Clerk's Office on May 10, 2011. The Plaintiff questions whether Defendants FSMB and NBME have actually mailed a copy of their Motion and Brief as they have stated in their Certificate of Service.) The Plaintiff, pursuant to Local Rules 7.1 and 7.3, submits the following Brief in support of his opposition to Defendants FSMB's and NBME's motion to Dismiss.

## STATEMENT OF THE CASE

The case before the Court is simple and straightforward. The Plaintiff's United States Medical Licensing Exam ("USMLE") Step 3 was scheduled and then taken on two non-consecutive days. These non-consecutive days were not separated by weekend days or holidays or days of unforeseeable disasters to the test center. Defendants FSMB and

NBME, in an ironic fashion, failed to correctly interpret and adequately enforce their own USMLE policies (See ARGUMENT, Section B below). It is clear that, to no fault of the Plaintiff, his Step 3 test on two non-consecutive days is a violation of USMLE policy. However, Defendants refused to admit the violation and gave two different explanations that neither is justifiable. When the Plaintiff sought answers to the possible effects of <u>out of norm</u> non-consecutive test days on the scoring of his test, the Defendants gave the Plaintiff false information in an effort to prevent him form asking more questions. At the request of the Plaintiff, Defendants did perform a routine standard recheck on Plaintiff's Step 3 score. But, the Plaintiff reasonably believes that Defendants' routine score recheck procedure may not be adequate to find out exactly how Plaintiff's test was originally scored and whether the scoring was actually error-free. So far, efforts by the Defendants FSMB and NBME (as described "supererogatory" by Defendants) failed to address the core issues in Plaintiff's complaint. The details of this case are outlined below.

In November of 2007, Plaintiff quit his full-time faculty job at the University of North Carolina at Chapel Hill to pursue a career in clinical medicine. To do so, Plaintiff had to pass USMLE, which is comprised of Step 1, Step 2, and Step 3, prior to obtaining a medical license and starting residency training. In less than eight months, Plaintiff successfully passed both Step 1 and 2 on first attempt and with good scores (mid 80s). With a goal of scoring higher on Step 3 (in the 90s) and after more than one year of preparation, Plaintiff scheduled his Step 3 test dates through Prometric's online scheduling system on December 7, 2009. Prometric assigned the Plaintiff to two non-

consecutive days (January 25 and 28, 2010), which were the earliest dates available at the time of scheduling in the Prometric Test Center in Greensboro, NC. Compl. Ex. A. Plaintiff took his Step 3 on these assigned dates in Prometric's Greensboro Test Center.

Please note that the Plaintiff first tried to schedule his Step 3 at Prometric's Raleigh, NC Test Center, where he took his Step 1 and 2. However, the earliest dates available in the Raleigh test center at the time did not meet the Plaintiff's needs. During the months of December 2009 and January 2010, the Plaintiff was interviewed for residency training by several programs, and Plaintiff informed those programs that he would take Step 3 test and provide them his score when it became available. The plan was to take Step 3 before the end of January 2010 and to have the score ready before the deadline for residency programs to rank their candidates, which was February 24, 2010 for that residency application year. As a foreign medical graduate, the Plaintiff understood then that passing Step 3 has paramount importance for securing a position in residency training, even though it is not an official requirement by any residency program. On the other hand, failure to pass Step 3 has a significant detrimental effect. Understanding the consequences, the Plaintiff was fully prepared for the test with confidence to score high.

The Plaintiff received his Step 3 score report from FSMB on February 17, 2010 with a failing score of 68 (a passing score was set at 75). In shocking disbelief, Plaintiff made a prompt request on the same day for a score recheck to FSMB by following USMLE policy. When Plaintiff contacted FSMB on February 22, 2010, a staff member

- 4 -

Case 1:11-cv-00129-CCE-PTS   Document 29   Filed 05/12/11   Page 4 of 16

by first name Lisa at FSMB's Office of Examination Services recognized immediately it was <u>out of norm</u> to assign an examinee's Step 3 test on a Monday and a Thursday, and she was apparently surprised that the test was actually taken on the two days assigned. Please be advised – This was <u>the day</u> when Plaintiff first came to know that his non-consecutive-day Step 3 test was not quite right, and it did reinforce Plaintiff's belief that there was something wrong with his score. Lisa further asked the Plaintiff whether there was a major storm or accident that prevented the Prometric test center from opening on the day following my first day of test. The Plaintiff told her there was none and he was originally scheduled on those two days. Without a request from the Plaintiff, Lisa promised that she would inform her supervisor about the situation and she would get back to the Plaintiff by phone on the same day. However, the Plaintiff never heard from her. On the following day, the Plaintiff contacted FSMB again and asked to speak with Lisa. The lady answered the phone at FSMB acknowledged there is a Lisa in the office but she could answer any questions I might have. Surprisingly, this lady stated that the scheduling of Plaintiff's Step 3 test was not unusual at all. She said that FSMB would perform a score recheck as requested. With the confidence of getting vindicated by a score recheck, the Plaintiff waited without taking further actions.

     The Plaintiff received his score recheck report via email on March 26, 2010, simply stating that scores were found to be accurate as originally reported without any detail. Not quite convinced with the results and without knowing how the standard score rechecked was done, the Plaintiff sought answers from the Scores/Examinees Record

Office of NBME on April 2, 2010. NBME first agreed to further investigate Plaintiff's Step 3 score (the so-called "manual score recheck" after performing a standard score recheck procedure). This was offered to the Plaintiff based on his sincere belief that his score was too low to reflect his test performance. However, a few days later NBME reversed their decision by the reason that "manual score recheck" is not provided to non-American medical school graduate. (Plaintiff is a foreign medical school graduate)

Since then, the Plaintiff made numerous contacts with Defendants FSMB and NBME and even sought help from a professional attorney. However, Defendants FSMB and NBME continued to insist that the scheduling of Plaintiff's Step 3 test on a Monday and a Thursday is not a violation of USMLE policy but refused to confirm that the test center where the Plaintiff took his Step 3 test was actually closed on Tuesday and Wednesday following the Plaintiff's first test day of Monday. Defendants FSMB and NBME also insisted that Plaintiff's Step 3 test on two non-consecutive days does not affect in any way the scoring of the test. Compl. Exs. C, D, G, H. But, Defendants efforts on investigating Plaintiff's Step 3 test score failed to support their claim.

## QUESTIONS PRESENTED

1. Have Defendants FSMB and NBME correctly interpreted their own USMLE policy of Step 3 test scheduling?

2. Can an <u>out of norm</u> scheduling of Plaintiff's Step 3 test on two non-consecutive days potentially cause Prometric to improperly bundle Plainiff's test data and lead to errors in scoring Plaintiff's Step 3 test?

- 6 -

Case 1:11-cv-00129-CCE-PTS   Document 29   Filed 05/12/11   Page 6 of 16

3. Have Defendants FSMB and NBME fully and objectively investigated Plaintiff's <u>extremely</u> low Step 3 score, which does not reflect his test performance?

## ARGUMENT

**A. The Standards Apply to Defendant's Motion to Dismiss.**

Under Federal Rule 12(b)(6), the Defendant must demonstrate "beyond doubt that the [Plaintiff] can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir.1997). The Court, in making its determination, must "accept the factual allegations in the [Plaintiff's] complaint and must construe those facts in the light most favorable to the [Plaintiff]." *Id.* Clearly, the Defendants' motion cannot survive the application of these standards, as demonstrated below.

**B. Taking Step 3 Test on Two Non-Consecutive Days Without a Justifiably Applicable Cause Is a Violation of USMLE Policy.**

The truth is, ironically, that Defendants FSMB and NBME have failed to correctly interpret their own UMSLE policy of Step 3 test administration, which prohibits the scheduling and delivering of Step 3 test on two non-consecutive days without a justifiable cause. As the test service provider of the USMLE, Defendant Prometric, through its online scheduling system, assigned Plaintiff on December 7, 2009 to two non-consecutive days (Monday, 01/25/2010 and Thursday, 01/28/2010) for his Step 3 test. On scheduling test dates, USMLE 2010 Bulletin of Information has the following explicit policy, without any ambiguity at all. Compl. Ex. A.

> [Examinees] may take the test on any day that it is offered during [their] assigned eligibility period, provided that there is space at the Prometric Test Center [they] choose.

Please note, the USMLE policy on scheduling test dates applies to USMLE Step 1, 2, and 3. Because Step 1 and 2 are one-day tests, an examinee can take either Step 1 or 2 on any day that is offered during his or her assigned eligibility period as long as there is space at the choosing Prometric Test Center. However, when it comes to Step 3, which is a two-day test, the Bulletin (*Id*) further states:

> Prometric Test Centers are closed on major local holidays. [and] Some, but not all, Prometric Test Centers are open on weekend days. When [examinees] schedule [their] Step 3 test dates, <u>the two days on which [examinees] take the test must be consecutive, unless the center is closed on the day that follows [examinees'] first day of testing.</u> In that event, Prometric will assign [examinees] to the next day the center is open for [examinees'] second day of testing. <u>In all other cases, [examinees] must take Step 3 on two consecutive days at the same test center.</u>

Whereas it is true that an examinee may take his or her Step 3 test on days within his or her eligibility period as long as there is space at his or her choosing Prometric Test Center, the policy is clear that the two days must be consecutive, unless the test center is closed on the day that follows the first day of testing. So, how could the Defendants justify that Plaintiff's Step 3 test on a Monday and a Thursday is consistent with the USMLE policy?

In a letter dated April 2, 2010 (Compl. Ex. C), Defendant NBME states, "It is not uncommon nor against USMLE policy for examinees to be scheduled on non-consecutive days." Yes, that is true but provided that the two days are separated by weekend day(s) or holiday(s) or justifiable days that the test center cannot remain open. Clearly, that does

not apply to Plaintiff's scheduling. The letter further said, "Scheduling of exams is based on the availability of Prometric. However, you [the Plaintiff] had the option to accept or request other test dates." Here, what options did the Plaintiff have are not relevant. The fact is that Prometric granted the Plaintiff's option, and the two days the Plaintiff chose were the earliest at two Prometric Test Centers within a 50-mile radius from where the Plaintiff lives. When the Plaintiff contacted Prometric's telephone schedule center (an office located in Baltimore, MD, where Prometric employees assign testing dates for examinees on the phone) on April 12, 2010, a lady by first name Gwen stated unequivocally that the scheduling of Plaintiff's Step 3 test on two non-consecutive days was indeed a violation of USMLE policy.

Knowing that the Plaintiff would not accept its first explanation, Defendant NBME conducted "additional review" by "a senior staff group." In a letter dated April 22, 2010 (Compl. Ex. D), Ms. Mary E. Patterson, the Manager of Test Administration for USMLE states, "Our review confirmed that the test center at which you[the Plaintiff] tested often closed on Tuesday and Wednesday. If, at the time you[the Plaintiff] schedule your[the Plaintiff's] day one testing appointment, the center is closed the following day(s), the day two appointment is scheduled for the next day the center is open. This is in accordance with USMLE policy for testing on consecutive days." The Plaintiff was truly surprised by such an illogical conclusion that a group of NBME's senior staff had reached. How did Prometric's online scheduling system determine for sure on the day the Plaintiff scheduled his Step 3 test (December 7, 2009) that the test center would be closed

on Tuesday of January 26, 2010 and Wednesday of January 27, 2010? Was the test center actually closed on those two days? Defendant NBME refused to confirm that was the case. To the contrary, the Plaintiff could recall that on his testing day two (Thursday, January 28, 2010) there were other Step 3 examinees who were also taking their second day testing but had their first day testing on the previous day (Wednesday, January 27, 2010). However, at that time, the Plaintiff was not aware that his Step 3 scheduling was out of norm. Ms. Patterson further states in her letter, "After careful consideration of all the information, the review group found insufficient grounds upon which to offer any options. Therefore, the examination will remain on your[the Plaintiff's] record." How could Defendant NBME believe a violation of USMLE policy was not a ground for investigation? When the Plaintiff sought appeal of the decision made by this group of senior staff, Ms. Patterson answered in an email dated April 26, 2010, "The review done by the group of senior staff at the NBME was the only appeal available to you[the Plaintiff]. There are no higher offices at the NBME or FSMB to which you[the Plaintiff] can appeal the final decision made by the group of senior staff."

Nonetheless, it is clear that the Defendant have failed to correctly interpret the USMLE policy of Step 3 test date scheduling, and that the scheduling and further permitting a Step 3 test on Monday of January 25, 2010 and Thursday of January 28, 210 by Prometric has violated USMLE policy on Step 3 test.

**C.      Taking Step 3 Test on Two Non-Consecutive Days Without a Justifiable Cause Can Result in Scoring Errors by NBME.**

Defendants asserted that the scheduling of Plaintiff's two non-consecutive days of Step 3 test would in no way affect the scoring of his test. Defendants stated that the computer-based Step 3 test is 100% automated and fail-safe and that Prometric test centers do not handle examinees' test data since they are recorded and transferred simultaneously to NBME for scoring. Compl. ¶7. However, such statements are simply not true. Prometric test centers do electronically bundle Step 3 examinees' test data from two test days for scoring. In *Grant v. National Board of Medical Examiners, et al.* 2009 WL 1457698 (N.D.N.Y.), it states,

> The Step 3 examination is delivered in two parts: a multiple choice portion and a computer-based case simulation ("CCS"). Dillion Aff. at p. 3. In the computer-based simulation, a "computer presents a simulated patient to the examinee, who decides which diagnostic information to obtain and how to treat and monitor patient progress in computer-simulated time." *Id*. Together, an examinee's response to both portions of the Step 3 exam combine to create his "Response Record." <u>After a Step 3 exam ends, the test delivery vendor, Prometric, "electronically bundles the examinee's Response Record and other Response Records from that testing center, encrypts the data and transmits it over secure lines to Prometric's data center."</u> The Response Records are stored at Prometic's data center until the NBME decrypts and scores the records using a computerized scoring program. *Id* at p. 5. The computerized scoring program is completely automated and computers perform "all the substantive tasks necessary to produce a final score." *Id* at p. 6. For each Response Record, the computerized scoring program produces a multiple choice raw score and a CCS raw score. The multiple choice raw score reflects the number of items answered correctly and the CCS raw score reflects the number of points obtained in managing the simulated patient. An examinee's final score is derived from these two scores.

Obviously, Prometric bundles an examinees' data from the two testing days after Step 3 tests end. Conceivably, Prometric has established standard protocols for bundling data from Step 3 tests taken on two consecutive days and on two non-consecutive days

with justifiable causes (split by a holiday or weekend days when the test center is not open). The Plaintiff has reasonable belief that Prometric's protocol for test data bundling may not be capable of properly combining Plaintiff's Step 3 test data. Negligence by Prometric and/or technical glitches may arise owing to Plaintiff's out of norm Step 3 test on two non-permissible and non-consecutive days. It does make more sense that USMLE policy on Step 3 test strictly requires scheduling on two consecutive days. Plaintiff believes that improperly bundling of his test data by Prometric led to errors in scoring his Step 3 test by NBME. Specifically, Plaintiff can reasonably predict that his Step 3 score was solely based on data from testing day 2, whereas data from testing day 1 were saved electronically by Prometric but not properly bundled with the testing day two data, and hence not scored by NBME. Such a conclusion is further supported by Plaintiff's Step 3 performance profile shown on his score report from USMLE, as stated in Compl. Ex. F. The Plaintiff has no doubt that reasons for his <u>extremely</u> low Step 3 score can only be attributed to the actions of the Defendants but not that of the Plaintiff. The matter completely lies in the hands of the Defendants.

D.  **Defendants FSMB's and NBME's "Supererogatory" Effort Failed to Directly Prove there were no errors in Scoring Plaintiff's Step 3 Test.**

After the routine standard score recheck, the Plaintiff contacted the Scores and Examinees Record Office of NBME on April 2, 2010 for help. The Plaintiff was clearly informed by the lady who answered the phone that if the Plaintiff believes his score is too low to reflect his test performance, the Plaintiff could submit a request for further

- 12 -

Case 1:11-cv-00129-CCE-PTS   Document 29   Filed 05/12/11   Page 12 of 16

investigation (informally known as "manual score recheck"). Further, NBME instructed the Plaintiff to email a request to scores@nbme.org with a headline of ATTN: Examinees Record Manager and it would be forwarded to the manager. The Plaintiff did as instructed on the same day. Surprisingly, a few days later on April 6, 2010, NBME refused to further investigate Plaintiff's Step 3 score by reason of "manual score recheck" is only offered to US medical graduates but not foreign medical graduates like the Plaintiff. It is clear that something was not right and the Plaintiff had been unfairly denied a "manual score recheck".

With help from a professional attorney, the Plaintiff continued to seek a full and objective investigation of his Step 3 score. Compl. Exs. E, F. Specifically, the Plaintiff needed to be sure that his <u>extremely</u> low score was indeed based on testing data from both day 1 and 2, not just from the day 2. The Defendants could easily find out answers that but refused to do so. By now, Defendants' efforts have proved that Plaintiff's day 1 and 2 test data were indeed recorded and saved. But, there is no evidence to support they were properly bundled by Prometric and correctly scored by NBME. To address this, the Plaintiff requested his Step 3 test answer sheet. Compl. Ex. E. The Defendants would not provide that. Compl. Ex. G. The Plaintiff further requested to know the percentage of questions on the first day of test that were scored correctly and the percentage of questions on the second day of the test that were scored correctly. Compl. Ex. F. Again, the Defendants refused to provide the information. Compl. Ex. H. Mr. David A. Johnson, the Vice President of FSMB's Assessment Services explained in his letter of November

- 13 -

Case 1:11-cv-00129-CCE-PTS   Document 29   Filed 05/12/11   Page 13 of 16

investigation (informally known as "manual score recheck"). Further, NBME instructed the Plaintiff to email a request to scores@nbme.org with a headline of ATTN: Examinees Record Manager and it would be forwarded to the manager. The Plaintiff did as instructed on the same day. Surprisingly, a few days later on April 6, 2010, NBME refused to further investigate Plaintiff's Step 3 score by reason of "manual score recheck" is only offered to US medical graduates but not foreign medical graduates like the Plaintiff. It is clear that something was not right and the Plaintiff had been unfairly denied a "manual score recheck".

With help from a professional attorney, the Plaintiff continued to seek a full and objective investigation of his Step 3 score. Compl. Exs. E, F. Specifically, the Plaintiff needed to be sure that his <u>extremely</u> low score was indeed based on testing data from both day 1 and 2, not just from the day 2. The Defendants could easily find out answers that but refused to do so. By now, Defendants' efforts have proved that Plaintiff's day 1 and 2 test data were indeed recorded and saved. But, there is no evidence to support they were properly bundled by Prometric and correctly scored by NBME. To address this, the Plaintiff requested his Step 3 test answer sheet. Compl. Ex. E. The Defendants would not provide that. Compl. Ex. G. The Plaintiff further requested to know the percentage of questions on the first day of test that were scored correctly and the percentage of questions on the second day of the test that were scored correctly. Compl. Ex. F. Again, the Defendants refused to provide the information. Compl. Ex. H. Mr. David A. Johnson, the Vice President of FSMB's Assessment Services explained in his letter of November

10, 2010 (*Id*), " Our effort to reassure Dr. Zhang on the completeness and accuracy of his Step 3 score have already gone beyond those that the USMLE program ordinarily accords to examinees." It begs these questions: Is the Plaintiff's Step 3 experience ordinary? Why was a "manual score recheck" not done by NBME's Score and Examinees Record?

Thus, Plaintiff respectfully requests that this Court find whether Plaintiff's Step 3 test data were in fact properly bundled and scored.

E.  **Plaintiff's Due Legal Rights Were Denied, Deprived of, or Interfered with by Defendants FSMB and NBME.**

Under 42 U.S.C. § 2000a(e) and 42 U.S.C. § 2000a(b)4(B), although being establishments not open to the public, Defendants FSMB and NBME as USMLE Step 3 test administrators must be considered a public accommodation to Plaintiff and other examinees who have fully paid for taking the test. Therefore, Plaintiff is fully and equally protected by 42 U.S.C. § 2000a-2 from "deprivation of, interference with, and punishment for exercising rights and privileges" secured under 42 U.S.C. § 2000a, which also entitles Plaintiff equal access to services provided by Defendants. Defendants FSMB and NBME cannot deny Plaintiff's request for further investigating his Step 3 score solely based on he is not an American but a foreign medical graduate. Compl. ¶4.

Furthermore, as a *pro se* litigant, the Plaintiff should be held to less stringent standards than those who are counseled by attorneys. Cf. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (holding pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). The Plaintiff expects the Court "to go to particular pains to protect *pro se* litigants against consequences of

technical errors if injustice would otherwise result." U.S. v. Sanchez, 88 F.3d 1243 (D.C. Cir. 1996).

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Defendants' motion to dismiss the complaint.

Respectfully submitted this 12th day of May, 2011.

JIHUI ZHANG, *pro se* Plaintiff
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com

## CERTIFICATE OF SERVICE

The hereby certify that the foregoing was served upon Defendants' counsel on May 12th, 2011 by first-class mail, postage paid, addressed to the following:

>Jonathan A. Berkelhammer
>Smith Moore Leatherwood LLP
>300 N. Greene Street
>Suite 1400
>Greensboro, NC 27401

This the 12th day of May, 2011.

*[signature]*

JIHUI ZHANG, *pro se* Plaintiff
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com