# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|                                   |     |                               |
|-----------------------------------|-----|-------------------------------|
| JIHUI ZHANG                       | )   |                               |
|                                   | )   |                               |
| Plaintiff,                        | )   |                               |
|                                   | )   |                               |
| v.                                | )   |                               |
|                                   | )   | Civil Action No.  1:11-CV-129 |
| FEDERATION OF STATE MEDICAL       | )   |                               |
| BOARDS, NATIONAL BOARD OF         | )   |                               |
| MEDICAL EXAMINERS,                | )   |                               |
| and PROMETRIC,                    | )   |                               |
|                                   | )   |                               |
| Defendants.                       | )   |                               |

## OBJECTION TO THE MAGISTRATE JUDGE'S RECOMMENDATION

Pursuant to Federal Rules of Civil Procedure 72(b), *pro se* plaintiff Jihui Zhang (Plaintiff) timely and respectfully objects to the Magistrate Judge's Recommendation to grant Defendants' motions to dismiss the above-referenced case. This objection is based on the following multiple grounds:

1) In addition to 42 USC 2000a-2(2), Plaintiff cited in his Civil Cover Sheet (Docket No. 2.) "Withhold or deny right or privilege" and "Breach of internal policies" as cause of action. It is necessary for the Court to protect *pro se* litigants against consequences of technical errors if injustice would otherwise result.

2) The Court relied overwhelmingly on Defendants' claims in determining whether they had breached their test scheduling policy.

Case 1:11-cv-00129-CCE-PTS   Document 34   Filed 01/13/12   Page 1 of 17

3) The Court did not consider the fact that Plaintiff's legitimate and reasonable requests for a fair investigation of his test score had been repeatedly denied by Defendants.

4) The Court did not weigh in on the impact of Plaintiff's test schedule on Defendants' proper scoring of his test. This has paramount significance to this case.

5) Defendant FMSB deliberately lied to Plaintiff about how test data were handled at defendant Prometric's test center in an attempt to convince him that his test was properly scored.

## RELEVANT FACTS AND ARGUMENTS ON OBJECTING TO THE MAGISTRATE JUDGE'S RECOMMENDATION

Plaintiff believes it is necessary to point out to the Court that this case is not about a disgruntled test taker who is desperately finding fault with the defendants, namely Prometric Inc. ("Prometric"), the Federation of State Medical Boards ("FSMB"), and the National Board of Medical Examiners ("NBME"). These three defendants ("Defendants") collectively oversee the process of United States Medical Licensing Examination (USMLE) Step 3, which includes, but not limited to, test registration, scheduling, administration, and scoring. There are more at stake than Plaintiff's professional career. This case potentially calls into question the validity of tens of thousands USMLE Step 3 test scores issued by FSMB and NBME and the integrity of these two organizations overseeing the licensing of medical professionals in the nation.

Genuinely, Plaintiff believed and continues to believe that getting a FAIL on his USMLE Step 3 test is highly unlikely. While seeking a score recheck, he found out multiple

Case 1:11-cv-00129-CCE-PTS   Document 34   Filed 01/13/12   Page 2 of 17

red flags indicating Defendants did not properly score his test. Explanations and arguments given by Defendants were neither valid nor defensible. In further support of these claims, Plaintiff provides the following facts and arguments supported by factual evidence.

## 1. Cause of Action

As a *pro se* litigant, Plaintiff proceeded under 42 U.S.C. § 2000a-2a as his statute identified when he filed his complaint. (Docket No. 2.) The Magistrate Judge found that Plaintiff "fails to state a claim for relief under section 2000a-1" and " has failed to state a claim for relief under section 2000a and section 2000a-2a." Such conclusions do not necessarily deprive Plaintiff's right to proceed under other applicable statutes. He also cited "withheld or deny right or privilege, breach of internal policies" as his cause of action. (Docket No. 2.) As a *pro se* litigant, Plaintiff should be held to less stringent standards than those who are counseled by attorneys. Cf. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (holding pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). The Court is required "to go to particular pains to protect *pro se* litigants against consequences of technical errors if injustice would otherwise result." U.S. v. Sanchez, 88 F.3d 1243 (D.C. Cir. 1996).

## 2. Facts And Arguments On Defendants' Breach Of Test Scheduling Policy

Defendants did not dispute the facts that Plaintiff was scheduled to take his two-day USMLE Step 3 test on January 25 (Monday) and 28 (Thursday), 2010, which was done through defendant Prometric's online scheduling system on December 07, 2009; that defendant Prometric permitted him to take his test as scheduled. The 2010 USMLE Bulletin of Information (Docket No. 1, Ex. B at p. 2) states the following policy on test scheduling:

- 3 -

You must have your Scheduling Permit before you contact Prometric to schedule a testing appointment. Appointments are assigned on a *"first-come, first-served"* basis; therefore, you should contact Prometric to schedule as soon as possible after you receive your Scheduling Permit.

You may take the test on any day that is offered during your assigned eligibility period, provided that there is space at the Prometric Test Center you choose.

Prometric Test Centers are *closed on major local holidays*.

USMLE Steps 1, 2 CK, and 3 are not available during the first two weeks of January.

*Some, but not all, Prometric Test Centers are open on weekend days.* When you schedule your Step 3 test dates, *the two days on which you take the test must be consecutive, unless the center is closed on the day that follows your first day of testing.* In that event, Prometric will assign you to the next day the center is open for your second day of testing. *In all other cases, you must take Step 3 on two consecutive days at the same test center.*

The two consecutive days policy of scheduling USMLE Step 3 test does have exceptions as indicated above, but those exceptions hardly apply to Plaintiff's scheduling. The January 25th of 2010 was a Monday, not a Friday or Saturday. January 26 (Tuesday) and January 27 (Wednesday), 2010 were not local holidays in Greensboro, North Carolina, where Plaintiff took his test. Because of USMLE's *"first come, first served"* policy, there is only one possible explanation why Plaintiff was not able to schedule his Day 2 test on January 26, 2010: there was no space available on that day, and so was not on the following January 27. 2010. Ms. Mary E. Patterson, manager of Test Administration for defendant NBME, however, explained in her April 22, 2010 letter (Docket No. 1, Ex. D), citing findings from a review conducted by a senior staff group:

"Our review confirmed that the center at which you tested is often closed on Tuesday and Wednesday. If, at the time you schedule your day one testing appointment, the center is closed the following day(s), the day two appointment is scheduled for the next day the center is open. This is in accordance with USMLE policy for testing on consecutive days."

- 4 -

This confirmation of the test center in Greensboro, NC "often closed on Tuesday and Wednesday" by "a senior staff group" from defendant NBME is quite puzzling as it contradicts the above-cited USMLE policy. To verify such a review and confirmation actually took place, Plaintiff, pursuant to Federal Rule of Civil Procedure 34, will request defendant NBME to provide document(s) showing: the time such a review by "a senior staff group" was conducted, number of members in the so-called "senior staff group" and their full legal names and contact information, and whether the confirmation was unanimous. To further examine this "often closed on Tuesday and Wednesday" finding, Plaintiff will request defendant Prometric to provide document(s) to show their operating schedule at the test center in Greensboro, NC during the period of at least two months before and after December 07, 2009, the date when Plaintiff scheduled his test.

Plaintiff stated in his Brief In Opposition to Defendants FSMB and NBME's Motion to Dismiss (Docket No. 29, at p. 10) that on his second day of testing there were other Step 3 takers who were also taking their second day of testing but had their first day of testing on the previous day. Defendants argued that even if true, this assertion does not show that the testing center was open on Tuesday or Wednesday at the time that Plaintiff scheduled his Step 3 testing. Defendants further suggested that increased demand between the date Plaintiff scheduled his testing and the days of testing may have caused Prometric to reopen the center (Docket No. 30, at p. 6). Plaintiff found Defendants' argument and suggestion hard to believe because USMLE has a *"first come, first served"* policy and because defendant Prometric's online scheduling system is completely automated. If January 26 and 27, 2010 (Tuesday and Wednesday) were not available to Plaintiff, they would not be

- 5 -

available to test takers who scheduled after him. In case of a test taker canceling his or her scheduled appointments on January 26 and 27, 2010 after Plaintiff scheduled his appointment, it would make these two dates available. This scenario, however, still disputes Defendants' argument and suggestion that the testing center was scheduled close and became open later due to increased demand.

On the point of whether his test scheduling on two non-consecutive days is in accordance with the USMLE policy, Plaintiff contacted defendants FSMB and Prometric and got answers that dispute the conclusion reached by defendant NBME's senior staff group. On February 22, 2010, Plaintiff called defendant FSMB's Examination Services at 817 868 4041 and a staff member, known as Lisa, informed him unequivocally that USMLE policy requires Step 3 be taken on two consecutive days and in his case it would have to be January 25 and 26, 2010. That conversation lasted for 11 minutes as indicated on Plaintiff's phone record (Ex. A), and notes of the conversation was taken (Ex. B) and a summary was emailed on a later date to Ms. Debbie Cusson, supervisor of FSMB's Examination Services (Ex. C). On April 12, 2010, Plaintiff called defendant Prometric at 443 751 4854 and talked to a representative, known as Gwen, who informed him that the scheduling of his Step 3 test dates (Monday and Thursday) is in violation of USMLE policy. She stated further that if Plaintiff had taken his test as such scheduled, he would have had to retake it again. She also asserted that it is USMLE's policy not Prometric's. That phone call lasted for 9 minutes (Ex. D), and a short note of the conversation was taken (Ex. E).

It is necessary to point out that, during the February 22, 2010 phone conversation with Lisa of defendant FSMB, her apparent surprise reaction over Plaintiff's Step 3 test scheduling was the **Red Flag #1,** indicating something was not right. She informed Plaintiff

- 6 -

that she would report the incident to her supervisor (Ms. Cusson) and requested his phone number to call him back on the same day. Plaintiff, however, never heard from her again. When Plaintiff made a followed-up call on February 23, 2010, he talked to a different lady who admitted that there was a "Lisa" in the office but she herself could help Plaintiff with his concerns. She was seemingly not concerned at all about Plaintiff's Step 3 test scheduling and informed him that a recheck would be done and the results would be emailed to him on March 29, 2010. That call lasted for 5 minutes as indicated on Plaintiff's phone record (Ex. A). Notes of the conversation was taken (Ex. B) and a summary was emailed to Ms. Debbie Cusson (Ex. C). The sharp contrast in the levels of concern by these two representatives of defendant FSMB together with no further explanation from Ms. "Lisa" or anyone from defendant FSMB raised the **Red Flag #2**. Plaintiff believes that, after Ms. "Lisa" reported the incident to Ms. Cusson, defendants FSMB and NBME started mounting a series of actions to cover up what had occurred to Plaintiff's Step 3 test. These actions started with an April 2, 2010 letter from NBME's Test Administration Specialist Toya Bagley and Ms. Patterson's letter of April 22, 2010 (Docket No. 1, Compl. Ex. C and D), with each giving a different but equally unconvincing explanation of Plaintiff's two non-consecutive days of Step 3 test.

### 3. Arguments On The Validity Of the USMLE Step 3 Score Recheck

Upon Plaintiff's timely request and payment of the required service fee (Docket No. 1, Compl. ¶ 2), defendants FSMB and NBME conducted a recheck of his Step 3 score. On March 26, 2010, defendant FSMB emailed Plaintiff an electronic copy of the score recheck results signed by Ms. Cusson. (Ex. F) This report does not contain any information regarding how the score recheck was done or any evidence to support the recheck results. It

- 7 -

simply states, "The scores were found to be accurate as originally reported." Interestingly, the date of exam listed in the report was 1/25/2010, and the date of Day 2 exam (1/28/2010) was not even mentioned. Plaintiff did not find any evidence showing that a score recheck was actually done. Even if it was, there were no indications that the way of Plaintiff's test scheduling (Monday and Thursday, two non-consecutive days) was taken into consideration when the recheck was done. Pursuant to Federal Rule of Civil Procedure 34, Plaintiff will request defendants FSMB and NBME to provide document(s) verifying the validity of the Step 3 score recheck.

Knowing that Step 3 score recheck is actually conducted by the Scores and Examinee Records of defendant NBME, Plaintiff contacted defendant NBME on April 2, 2010 as indicated by a 40-minute phone call to 215 590 9710 (Ex. D). The key points of this call were mentioned in an email to Ms. Cusson (Ex. C) and were also cited in Plaintiff's Brief in Opposition to Defendants FSMB and NBME's Motion to Dismiss (Docket No. 29, at p. 12 - 13). During the call Plaintiff was clearly informed that if he believed his score was too low to reflect his test performance, he could submit a request for further investigation (also known as "manual score recheck"). He was further instructed to email a request with a headline of Attn: Examinees Record Manager to scores@nbme.org. Plaintiff did as instructed on the same day (Ex. G). Out of surprise, on April 6, 2010, Plaintiff received a call from defendant NBME, which lasted for 41 minutes as shown on Plaintiff's phone record (Ex. D). The lady who called Plaintiff did not identify herself, but Plaintiff now reasonably believes she was Ms. Patterson of defendant NBME's Test Administration. The purpose of her call was seemly trying to convince Plaintiff there was nothing wrong with his Step 3 test score. She further stated that "manual score rechecks" were not offered to non-

- 8 -

US medical graduates, so it was not available to Plaintiff, a foreign medical graduate. At the request of Plaintiff, this lady agreed to email him a summary of this 41-minute phone conversation. After five days and without hearing from her, Plaintiff emailed defendant NBME's Scores and Examinee Records to request the agreed-upon summary. (Ex. H). The lady, however, failed to do what she agreed on. The key points of her conversation with Plaintiff were mentioned in an email to Ms. Cusson (Ex. C).

On April 9, 2010, once again out of surprise, Plaintiff received an email from the Scores and Examinee Records of defendant NBME that states "After discussing your situation and our April 6, 2010 conversation with the Test administration Department, it was recommended that you contact them directly." (Ex. I) This was the **Red Flag #3**, indicating it was likely that because there was a test administration error (i.e., Step 3 test on two non-consecutive days) the Scores and Examinee Records would not do an investigation of Plaintiff's Step 3 scores. This also raised a serious question about the validity of the score recheck reported to Plaintiff on March 26, 2010 (Ex. F) by defendants FSMB and NBME.

Plaintiff turned back to defendant FSMB for answers on April 26, 2010. He called the Examination Services of defendant FSMB at 817 868 4041 and his call was addressed by a staff member, who eventually agreed to transfer Plaintiff to Ms. Cusson's line to leave a message as she was at a meeting at the time. This conversation lasted for more than 13 minutes as indicated by Plaintiff's phone record (Ex. D), and a brief note of the conversation was taken (Ex. E). At 4:27 pm on April 26, 2010, Plaintiff received a call from Ms. Cusson and had a 71-mimute conversation with her. This time Plaintiff decided to write a summary of the conversation on his own and emailed to Ms. Cusson (Ex. C). Interestingly, about two hours after his phone conversation with Ms. Cusson had ended, Plaintiff received an email

- 9 -

from Ms. Patterson of defendant NBME stating, "The review done by the group of senior staff at the NBME was the only appeal available to you. There are no higher offices at the NBME or FSMB to which you can appeal the final decision by the group of senior staff." (Ex. J) This suggests a coordinated effort by defendants FSMB and NBME to stop Plaintiff from seeking the truth of his Step 3 score.

**4. Facts And Arguments On The Impact Of Plaintiff's Test Dates On His Test Scores And The Necessity Of A Manual Score Recheck**

Plaintiff took his USMLE Step 3 test on Monday of January 25 and Thursday of January 28, 2010, and his test went well, as expected. (Compl. ¶ 1) He neither experienced during the test nor complained after the test about significant test delivering problems, such as but not limited to computer screen freeze, sluggish transition from one question to the next, etc. So, it should be expected that defendants FSMB and NBME's review of his test administration showing that he received the full amount of testing time (Compl. Ex. C) and a complete data file was captured from both days of testing (Compl. Ex. G). Such findings show that defendants FSMB and NBME did have a complete data file for each of the two testing days, however, they are not sufficient to prove that these two data files, one for Monday, January 25, 2010; the other for Thursday, January 28, 2010, were both properly accounted for accurately scoring Plaintiff's Step 3 test. The critical factor in this argument is the two non-consecutive days of testing, which is more than likely the cause for his very low Step 3 test score.

Defendants FSMB and NBME insisted repeatedly that Plaintiff's two non-consecutive days of testing (Monday and Thursday) would not affect his test score (Compl. Ex. C, D, G, H), but they refused to explain why there is a two consecutive days policy in

Case 1:11-cv-00129-CCE-PTS   Document 34   Filed 01/13/12   Page 10 of 17

their USMLE Bulletin. Suspecting errors might have occurred in scoring his Step 3 test taken on two non-consecutive days, Plaintiff discussed the potential impact of such a Monday-and-Thursday scheduling on his Step 3 test score in the above-mentioned 71-mimute conversation with Ms. Cusson on April 26, 2010. She asserted that Step 3 tests are done on a completely automated, computer-based test delivery system and examinees' testing data are simultaneously captured and transferred to defendant NBME. She further asserted there are no needs for defendant Prometric's testing center staff to handle Examinees' Step 3 test data. Her assertions were cited in Compl. ¶ 7 and in Plaintiff's Opposition to Defendants FSMB and NBME's Motion to Dismiss (Docket No. 29, at p. 11). Plaintiff swears under oath to the truthfulness of what he cited. Not knowing how defendant Prometric exactly handles Step 3 test data, Plaintiff believed Ms. Cusson but did not give up his quest to discover the truth. His decades of experience as a physician and as a scientist tell him that there is apparently something wrong.

Mr. Randolph M. James, counsel of Plaintiff at the time, sent Ms. Cusson of defendant FSMB a letter on August 10, 2010 requesting defendant FSMB to provide a manual score recheck of Plaintiff's Step 3 test, copies of Plaintiff's rechecked answer sheet, and information regarding test date compliance with USMLE's consecutive day requirement. (Compl. Ex. E). Responding in a letter dated September 2, 2010 (Compl. Ex. G), Mr. David A. Johnson, vice president of defendant FSMB simply cited the findings of the review done by the so-called "senior staff group" of defendant NBME as stated in Ms. Patterson's letter of April 22, 2010. He refused to conduct a manual investigation of Plaintiff's Step 3 scores. He also refused to provide copies of Plaintiff's rechecked answer sheets. His reason for not providing copies of answer sheets was that the items on Plaintiff's

- 11 -

Step 3 test administration are part of a live item testing pool, which are considered secure and not available for review. Knowing the paramount significance of whether Plaintiff's two days' test data were properly accounted to derive his Step 3 test score, Mr. Randolph M. James, on behalf of Plaintiff, sent Mr. Johnson a letter on November 4, 2010 (Compl. Ex. F) simply requesting defendant FSMB to provide the percentage of correct answers for each testing day. Mr. James and Plaintiff believed it was a very reasonable request. Considering defendants FSMB and NBME had the complete data file of Plaintiff's Step 3 test and had already performed a routine score recheck, such a request would not be difficult to fulfill. Mr. Johnson, however, refused again to provide those percentages. If he had done so, provided defendants FSMB and NBME had done nothing wrong, it could have easily helped them prove that both days' test data were indeed accounted in scoring Plaintiff's Step 3 test.

At this point, Plaintiff was extremely disappointed with defendant FSMB, an organization oversees licensing of medical professionals in this nation and embraces equally important values including integrity and excellence as stated on its official web site: (Ex. K)

> **Integrity:** Incorporates honesty, ethical behavior, reliability and transparency in all its operations and services.
> **Excellence:** Promotes and maintains high standards of performance and a commitment to continuous improvement, efficiency and effectiveness.

He decided not to further pursue his case and thus disengaged from Mr. James's service. In late January of 2011, however, Plaintiff came to know a lawsuit involving NBME (*Grant v. National Board of Medical Examiners, et al.* 2009 WL 1457698 (N.D.N.Y.)), in which the following paragraph was cited with regards to how Prometric Test Center handles USMLE Step 3 test data after the two-day exam ends:

> The Step 3 examination is delivered in two parts: a multiple choice portion and a computer-based case simulation ("CCS"). Dillion Aff. at p. 3. In the

- 12 -

computer-based simulation, a "computer presents a simulated patient to the examinee, who decides which diagnostic information to obtain and how to treat and monitor patient progress in computer-simulated time." *Id*. Together, an examinee's response to both portions of the Step 3 exam combine to create his "Response Record." ***After a Step 3 exam ends, the test delivery vendor, Prometric, "electronically bundles the examinee's Response Record and other Response Records from that testing center, encrypts the data and transmits it over secure lines to Prometric's data center."*** The Response Records are stored at Prometic's data center until the NBME decrypts and scores the records using a computerized scoring program. *Id* at p. 5. The computerized scoring program is completely automated and computers perform "all the substantive tasks necessary to produce a final score." *Id* at p. 6. For each Response Record, the computerized scoring program produces a multiple choice raw score and a CCS raw score. The multiple choice raw score reflects the number of items answered correctly and the CCS raw score reflects the number of points obtained in managing the simulated patient. An examinee's final score is derived from these two scores.

The fact that "*After a Step 3 exam ends, the test delivery vendor, Prometric, 'electronically bundles the examinee's Response Record and other Response Records from that testing center, encrypts the data and transmits it over secure lines to Prometric's data center.*" directly contradicts what Ms. Cusson of Defendant FSMB's Examination Services asserted during her 71-minute call to Plaintiff on April 26, 2010 (see above at p. 11). This raised the most serious **Red Flag # 4**. Why did Ms. Cusson lie about how Step 3 test data are handled and transmitted at Prometric Test Centers? Plaintiff could only assume the reason for her lie was to convince Plaintiff that there is no room for error in Step 3 tests whether they are taken on two consecutive days or not. This finally led Plaintiff to realize that justice can and will only be served on his case in the Court of law. He begs this simple question: Did defendant Prometric mishandled Plaintiff's Step 3 test data that were recorded and saved on two non-consecutive days? He believes that defendant Prometric actually did. Plaintiff requests the Court to consider the following scenario:

Case 1:11-cv-00129-CCE-PTS   Document 34   Filed 01/13/12   Page 13 of 17

First, because Defendants do not want to tell him, Plaintiff has to make a reasonable assumption: Prometric Testing Center's Step 3 test delivery system is automated to electronically bundle data files from two days of Step 3 test after the test ends, provided that these two days are consecutive. This assumption explains Defendants' two consecutive days policy on Step3 tests; otherwise such a policy is truly unnecessary. For tests taken on non-consecutive days (such as separated by weekend days or holidays, such dates can be easily programmed into the test delivery system), the system allows manual intervention from Prometric Testing Center personnel to bundle data files.

**1.** Plaintiff took his Day 1 Step 3 test on January 25, 2010. Responses to test questions were captured and saved properly, and Day 1 test data file was generated.

**2.** No actions by Plaintiff on January 26, 2010. Defendant Prometric's test delivery system could not find Plaintiff's Day 2 test data file for electronically bundling with Day 1 test data file.

**3.** No actions again by Plaintiff on January 27, 2010. There was still no Day 2 test data file available for bundling.

**4.** Plaintiff took his Day 2 Step 3 test on January 28, 2010. Responses to test questions were captured and saved properly, and Day 2 test data file was created. Though finally the Day 2 test data file was available, electronically bundling these two test data files became a problem. The test delivery system did not allow automated bundling of data files saved separately on Monday of January 25 and Thursday of January 28, 2010. In this situation, the system did not even allow testing center staff to intervene manually.

**5.** Plaintiff's Step 3 test data files were transmitted to defendant Prometric's data center without proper bundling. This ultimately led to an inaccurate score on Plaintiff's test when these data files were decrypted and scored by defendant NBME's computerized scoring program.

Plaintiff believes that the above scenario is highly probable. In his Brief In Opposition to Defendants FSMB and NBME's Motion to Dismiss (Docket No. 29, at p. 12), Plaintiff reasonably predicted that his Step 3 score was solely based on Day 2 test data file, while Day

- 14 -

1 test data file was saved but not properly bundled with his Day 2 test data file and hence not accounted to derive his final Step 3 test score by defendant NBME. Proof otherwise is now a burden that falls on defendants FSMB, NBME and Prometric.

Based on the above-mentioned facts and arguments, Plaintiff respectfully objects to the Magistrate Judge's recommendation on granting Defendants' motion to dismiss, and Plaintiff requests the Court to consider these facts and arguments and make a de novo determination of this case.

Respectfully submitted this the 13th day of January, 2012.

JIHUI ZHANG, *pro se* Plaintiff
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon Defendant Prometric's counsel on January 13th, 2012 by first-class mail, postage paid, addressed to the following:

> Reid L. Phillips
> Benjamin R. Norman
> Brooks, Pierce, McLendon, Humphery & Leonard, LLP
> 2000 Renaissance Plaza
> 230 North Elm Street
> Greensboro, NC 27401

This the 13th day of January, 2012.

JIHUI ZHANG, *pro se Plaintiff*
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com

- 17 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon Defendants'

counsel on January 13th, 2012 by first-class mail, postage paid, addressed to the following:

> Jonathan A. Berkelhammer
> Smith Moore Leatherwood LLP
> 300 N. Greene Street
> Suite 1400
> Greensboro, NC 27401

This the 13th day of January, 2012.

JIHUI ZHANG, *pro se* Plaintiff
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com