IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JIHUI ZHANG )
)
          Plaintiff, )
)
v. )
) Civil Action No. 1:11-CV-129
FEDERATION OF STATE MEDICAL )
BOARDS, NATIONAL BOARD OF )
MEDICAL EXAMINERS, )
and PROMETRIC, )
)
          Defendants. )

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF OBJECTION TO THE**

**MAGISTRATE JUDGE'S RECOMMENDATION**

Pursuant to Federal Rules of Civil Procedure 72(b), *pro se* plaintiff Jihui Zhang (Plaintiff) respectfully files this reply brief in support of his Objection to the Magistrate Judge's Recommendation [D.E. # 34] (hereinafter "Objection") to grant Defendants' motions to dismiss the above-referenced case. In this brief, Plaintiff gives point-to-point rebuttal to the key arguments by defendants Federation of State Medical Boards ("FSMB") and National Board of Medical Examiners ("NBME") and by defendant Prometric in their Responses to Plaintiff's Objections [D.E. #35] and [D.E. #36], respectively. All three defendants are collectively referred to hereinafter as "Defendants."

The many lines of factual evidence that Plaintiffs has provided in his Objection directly support the claims cited in his Complaint. [D.E. #1] The Court shall receive and

consider them (28 U.S.C. § 36(b)(1)) and take necessary steps "to go to particular pains to protect *pro se* litigants against consequences of technical errors if injustice would otherwise results." (*U.S. v. Sanchez*, 88 F. 3d 1243, D.C. Cir. 1996) This reply brief further supports that, after a *de novo* determination of those portions of the Magistrate Judge's Recommendation to which objection is made, the Court shall permit Plaintiff's claims to proceed to discovery and trial.

## STANDARD OF REVIEW

If objection is made to the recommendation of a magistrate judge, a judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 36(b)(1).

## POINT-TO-POINT REBUTTAL

1. Knowing Plaintiff's score for USMLE Step 3 Exam is 68 and the minimum passing score for the exam is 75, Defendants stated in their responses, "One can logically infer from the fact that Plaintiff's score of 68 was so close to the passing score, that Plaintiff's score reflected the results from both days of the two day test." [D.E. # 35, p. 10, footnote] and "It is unreasonable to conclude that Plaintiff's nearly passed Step 3 based upon one day's response." [D.E. # 36, p. 10, ¶ 2]

   First and foremost, it is quite necessary to clarify a key point regarding USMLE Step 3 scores. The 2010 USMLE Bulletin of Information ([D.E. #24 at p. 32) states:

> On the three-digit scale, most Step 1, 2 CK, or 3 scores fall between 140 and 260. The mean score for first-time examinees from accredited medical school programs in the United States is in the range of 210 to 230, and the standard deviation is approximately 20. Your score report will include the mean and standard deviation for recent administrations of the examination. The two-digit score is derived from the three-digit score. It is used in score reporting because some medical licensing authorities have requirements that include language describing a "passing score of 75." The two-digit score is derived in such a way that a score of 75 always corresponds to the minimum passing score.

Plaintiff's Step 3 score report shows a three-digit score of 174 and the derived two-digit score of 68, sometimes written as 174/68. See Exhibit A. It further states:

> [On the three-digit score] For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools are approximately 214 and 17, respectively, with most scores falling between 140 and 260. A score of 187 is recommended by USMLE to pass Step 3. The standard error of measurement (SEM) for this scale is approximately six points.
>
> [On the two-digit score] A score of 75 on this scale, which is equivalent to a score of 187 on the scale described above, is recommended by USMLE to pass Step 3. The SEM for this scale is approximately three points.

From the above statements, scores of the then recent administrations of USMLE Step 3 test together with Plaintiff's can be plotted in the following bell curve distribution (see next page). It is worth noting that the mean and standard deviation given in the above statement are for first-time examinees from U.S. and Canadian medical schools. USMLE does not publish such data for non-US/Canadian medical schools to which Plaintiff belongs. It does, however, publish performance data that show, for the year 2010 when Plaintiff took his Step 3 test, 96% of the first-time Step 3 examinees from US/Canadian medical schools passed the exam, while 83% of those from non-US/Canadian medical schools passed. See Exhibit B. It is true that

examinees from non-US/Canadian medical schools are more likely to fail Step 3 test on their first try than their US/Canadian counterparts. Nonetheless, it also holds true that Plaintiff's Step 3 score of 174 is very low – more than two standard deviations below the mean when compared with scores of first-time examinees from U.S. and Canadian medical schools.



Plaintiff's extremely low score of 178/68 explains why he was shocked as described in his Complaint [D.E. #1, p. 2, ¶ 2] and supports his statement of *"My test score [was] too low to reflect my preparation and actual performance on the test days."* [*Id.* at p. 3]. Such a low score indicates strongly that only part of Plaintiff's Step 3 test was accounted for scoring by defendant NBME, which was more than likely resulted from his two non-consecutive days (Monday and Thursday) of testing. It is of paramount importance to point out that comparing Plaintiff's two-digit score of 68 with the passing score of 75 can be very misleading.

Defendants' allegation that Plaintiff's score was so close to the passing score that it reflected the results from both testing days is not logical inference but rather pure imagination without grounds. Furthermore, attorneys for Defendants have repeatedly chosen to neglect the fact that defendant NBME's Scores and Examinees Record department recognized Plaintiff's score is too low and further agreed to investigate it, even though such an investigation was not conducted without giving any specific reasons from this department. See D.E. #34 at p. 8 and 9, D.E. #9 at p. 9 and 10, and D.E. #1 at ¶ 4. The mysterious representative of defendant NBME, who called Plaintiff and exerted that score investigations (a.k.a. manual score rechecks) are not offered to non-US medical graduates, is not from the Scores and Examinees Record department [D.E. #34 at p. 8]. The fact – the Scores and Examinees Record department shirked its responsibility of score investigation and referred Plaintiff's incident to Test Administration department of defendant NBME is very perplexing [D.E. #34 at p. 8 and 9] – implies there is a problem of test administration with Plaintiff's Step 3 test, i.e., scheduled and taken on two non-consecutive days (Monday and Thursday).

For the reasons stated above, the Court must not be misled by Defendants' allegations, i.e., *"Plaintiff's score of 68 was so close to the passing score, that Plaintiff's score reflected the results from both days of the two day test,"* and *"It is unreasonable to conclude that Plaintiff's nearly passed Step 3 based upon one day's response."* In order to find out the truth – whether Plaintiff simply failed his Step 3 test or Defendants did not properly score his test – the Court shall make a *de novo* determination and further permit Plaintiff's claims to proceed to discovery and trial.

2. "Plaintiff has not alleged that FSMB or NBME breached their internal policies." [D.E. #35 at p. 7 and 8] and "Any Claim Arising from the Non-Consecutive Scheduling of

Plaintiff's Step 3 Fails to State a Claim upon which Relief Can Be Granted." [D.E. #36 at p. 11 and 12]

Plaintiff has consistently claimed in his Complaint, Briefs in Oppositions to Dismiss, and Objections [D.E. #1, 27, 29, and 34] that his Step 3 test scheduling on Monday of January 25, 2010 and Thursday of January 28, 2010 is in violation of USMLE two consecutive days test scheduling policy. This claim is also supported by a representative of defendant FSMB named 'Lisa' and a representative of defendant Prometric named 'Gwen'. [D.E. #1 at ¶2, D.E. #34 at p. 7] However, attorneys for Defendants have repeatedly chosen to neglect these two lines of evidence.

Defendant NBME, when questioned by Plaintiff, replied that "*It is not uncommon nor against USMLE policy for examinees to be scheduled on non-consecutive days.*" [D.E. #1, Ex. C] Such a statement lacks a direct and specific explanation to Plaintiff's Step 3 test schedule and must not be interpreted as "*not uncommon nor against USMLE policy*" for examinees to be scheduled on Monday and Thursday, two days not separated by non-working days. When further questioned by Plaintiff, defendant NBME conducted a review by "a senior staff group" and concluded – "*Our review confirmed that the center at which you tested is often closed on Tuesday and Wednesday. If, at the time you schedule your day one testing appointment, the center is closed the following day(s), the day two appointment is scheduled for the next day the center is open. This is in accordance with USMLE policy for testing on consecutive days.*" [D.E. #1, Ex. D]

The Court shall consider the following facts: defendant Prometric's online scheduling system is completely automated; scheduling can be done as early as 90 days ahead; it works on a first-come-first-served basis. Thus, any often closed Tuesdays and Wednesdays must

have been marked unavailable on the online scheduling system like local holidays or weekend days (*Some, but not all, Prometric Test Center are open on weekend days* [D.E. #24 at p. 19]). With argument and counterargument from Defendants' attorneys and Plaintiff, whether or not "*the center at which you tested is often closed on Tuesday and Wednesday.*" becomes a crucial piece of evidence. This single piece of evidence will essentially determine the USLME policy compliance of Plaintiff's Step 3 test scheduling on two non-consecutive days.

As proposed in his Objection [D.E. #34 at p.5] and in pursuant to Federal Rule of Civil Procedure 34, Plaintiff sent Defendants on January 19, 2012 two separate requests for production of documents. The one to defendant Prometric requested production of document(s) to show their operating schedule at the test center in Greensboro, NC, where Plaintiff took his test, during the period of at least two months before and after December 07, 2009, the date when Plaintiff scheduled his test. If the conclusion reached by defendant NBME's "senior group staff" – "*the center at which you tested is often closed on Tuesday and Wednesday*" – does not hold true, then Plaintiff's Step 3 test scheduling is NOT "*in accordance with USMLE policy for testing on consecutive days.*" The other to Defendants FSMB and NBME requested production of document(s) showing: the time such a review by "a senior staff group" was conducted, the number of members in the "*senior staff group*" and the members' full legal names and contact information, and whether the conclusion was unanimous. The validity of the review by a senior staff group of defendant NBME is of vital importance. Such a review along with its conclusion was only mentioned in Ms. Mary E. Patterson's letter of April 22, 2010 (D.E. #1, Ex. D) without an official report, not even the information about the number of the senior staff or their names. It MAY just be the

Case 1:11-cv-00129     Document 37     Filed 2/7/2012     Page 7 of 13
Case 1:11-cv-00129-CCE-PTS   Document 39   Filed 02/07/12   Page 7 of 13

conclusion of Ms. Patterson and hers only, considering that she appears to have a history of falsifying documentation [evidence was given in the Request for admissions to defendants FSMB and NBME (see next paragraph) but not attached to this Brief as exhibits].

These two requests for production of documents along with two requests for admissions were served on January 19, 2012 to attorneys for Defendants. Plaintiff does not provide those four requests as exhibits to this Brief because as self-litigant he is not sure that doing so is permitted by F.R.C.P., but would be more than willing to provide them if permitted. On January 25, 2012, Mr. Jon Berkelhammer, attorney for defendants FSMB and NBME wrote Plaintiff and stated, (Exhibit C)

> We have received the Request for Admissions and Request for Production of Documents to Defendants Federation of State Medical Boards and National Board of Medical Examiners, which were served on January 19, 2012. We believe the discovery is improper and request that it be withdrawn.

In response, Plaintiff promptly wrote Mr. Berkelhammer on January 31, 2012 and withdrew his discovery. Exhibit D. Plaintiff also voluntarily withdrew the discovery to defendant Prometric. Exhibit E.

Last but definitely not the least, defendant NBME's Scores and Examinees Record department initially agreed to investigate Plaintiff's very low Step 3 score but later shirked its responsibility of score investigation and referred Plaintiff's incident to Test Administration department of defendant NBME. [D.E. #34 at p. 8 and 9] This implies there is a problem of test administration with Plaintiff's Step 3 test, i.e., scheduled and taken on two non-consecutive days (Monday and Thursday).

For the reasons stated above and in order to determine if Defendants has breached USMLE's Step 3 two-consecutive-day test scheduling policy, the Court shall make a *de novo* determination and further permit Plaintiff's claims to proceed to discovery and trial.

3. "Plaintiff's own concessions belie his argument that his test schedule impacted the scoring of his Step 3 Exam." [D.E. #35 at p. 9] and "Any Claim Regarding the Delivery of Plaintiff's Step 3 Responses and Its Effects on the Scoring of Plaintiff's Step 3 Fails to State a Claim upon which Relief Can Be Granted." [D.E. #36 at p. 9]

Plaintiff has consistently claimed in his Complaint, Briefs in Oppositions to Dismiss, and Objections [D.E. #1, 27, 29, and 34] that his Step 3 test was not properly bundled and subsequently scored improperly by Defendant. Attorneys for Defendants, however, have repeatedly chosen to neglect the argument – the fact that defendants FSMB and NBME did receive a complete data file of Plaintiff's two testing days does not necessarily mean that the data file was properly bundled and scored. As described in his Objection [D.E. #34, p. 7 to 15], Plaintiff's Step 3 test on Monday and Thursday can cause defendant Prometric's test center to fail to bundle his two testing days' data, which can in turn lead to failure to score Plaintiff's test properly. Based on the facts and evidence available, one can logically conclude that was more than likely what had occurred. The very problem is that Defendants equate having Plaintiff's complete Step 3 Response Records with having properly scored his test.

It is of vital importance to lay out the facts that both sides have agreed on and to draw legitimate conclusions only from these facts. A critical fact that defendant Prometric's test center 'electronically bundles the examinee's Response Record' but Ms. Cusson of defendant FSMB deliberately lied to Plaintiff about it is very troublesome. [D.E. #1 at ¶7, D.E. #34 at p.

13] So far, evidence from Defendants only proves the fact that they have a complete data file for both and each of the two testing days. It is not hard to conclude nothing more than that can be drawn by reading defendants' factual statements that are attached as Exhibits C, D, G and H in the Complaint. There is simply no evidence to show that defendants FSMB and NBME have scored Plaintiff's Step 3 test with both days test records properly accounted.

The score recheck, which Plaintiff paid for and defendants FSMB and NBME conducted [D.E. #34, Ex. F], contains no evidence or information that prove otherwise. This is precisely why Plaintiff, represented by Mr. Randolph M. James, requested that defendant FSMB provide copies of his rechecked answer sheets but defendant refused to do so [D.E. #1, Ex. E and G]. When further requested to provide *'the percentage of questions on the first day of Step 3 that were scored correctly and the percentage of questions on the second day of Step 3 that were scored correctly'*, defendant FSMB refused again [D.E. #1, Ex. F and H]. The stated reason for the refusal – *"Our efforts to reassure Dr. Zhang on the completeness and accuracy of his Step 3 score have already gone beyond those that the USMLE program ordinarily accords to examinees"* and *"We do not believe that providing Dr. Zhang with further data on his test administration is appropriate."* [D.E. #1, Ex. H] – is simply a denial to finding the truth. Considering defendants FSMB and NBME have Plaintiff's complete Step 3 test data from two testing days, how hard can it be for them to show that both days of Plaintiff Step 3 test were properly accounted for his score? Such an action, if taken, is much more convincing than Defendants attorneys' argument, no matter how many times they repeat it. The fact of the matter is that concessions to the same set of facts by Defendants and Plaintiff do NOT *'belie his [Plaintiff's] argument that his [Plaintiff's] test schedule impacted the scoring of his Step 3 Exam'* but do dispute Defendants' argument that *'Any Claim*

*Regarding the Delivery of Plaintiff's Step 3 Responses and Its Effects on the Scoring of Plaintiff's Step 3 Fails to State a Claim upon which Relief Can Be Granted.*'

For the reasons stated above and in order to determine if both days of Plaintiff's Step 3 test were properly accounted for his very low score, the Court shall make a *de novo* determination and further permit Plaintiff's claims to proceed to discovery and trial.

4. <u>"The Court Should not Consider any New Allegations or Documents." [D.E. #36 at p. 12) and "Any effort by Plaintiff to add additional facts or amend his allegations through his memorandum or objections should be rejected." [D.E. #35 at p. 2, footnote]</u>

In his Objection [D.E. # 34] as well as his Brief and Response in Opposition [D.E. #26, 27, 28, and 29], Plaintiff provided documents and factual evidence to support the claims he made in his Complaint and Civil Cover Sheet, i.e., "Withhold or deny right or privilege" and "Breach of internal policies" [D.E. # 1, D.E. #2]. There were no new allegations. What Defendants called *"New Allegations"* are actually material facts – phone records, email records, and conversation summaries – to support Plaintiff's initial claims. These so-called *"New Allegations"* also provided legitimate explanations to what had happened to Plaintiff's Step 3 test.

28 U.S.C. § 36(b)(1) states, "If objection is made to the recommendation of a magistrate judge, a judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." It continues to state, "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Therefore, Defendants' statements as referenced above are entirely without legal grounds and should not be considered by the Court.

## CONCLUSION

For the reasons outlined above and in the previous Objection, Plaintiff respectfully requests that the Court accept evidence that supports Plaintiff's claims filed in the initial Complaint, conduct a *de novo* determination of those portions of the Magistrate Judge's Recommendation to which objection is made, and further permit these claims to proceed to discovery and trial.

Respectfully submitted this the 7th day of February, 2012.

_____
JIHUI ZHANG, *pro se Plaintiff*
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon Defendants' counsel on February 7, 2012 by first-class mail, postage paid, addressed to the following:

>Jonathan A. Berkelhammer
>Smith Moore Leatherwood LLP
>300 N. Greene Street
>Suite 1400
>Greensboro, NC 27401
>
>*Attorney for Defendants Federation of State Medical Boards and National Board of Medical Examiners*
>
>Reid L. Phillips
>Benjamin R. Norman
>Brooks, Pierce, McLendon, Humphery & Leonard, LLP
>2000 Renaissance Plaza
>230 North Elm Street
>Greensboro, NC 27401
>
>*Attorneys for Defendant Prometric Inc.*

_____
JIHUI ZHANG, *pro se* Plaintiff
102 Rowe Road
Chapel Hill, NC 27516
Telephone: 919 942 1880
E-mail: zjh1023@gmail.com